IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAMONTE ALTON EALY,

                          Plaintiff,                          OPINION AND ORDER

    v.                                                          17-cv-718-wmc

DIANE FLADHAMMER, DONALD
STRAHOTA, DARRELL JANZEN, TRACI
NAVIS, TIMOTHY CRAPSER, SALLY WESS,
LARRY FUCHS, TIMOTHY THOMAS, TARA
MILLER, and EMILY DAVIDSON,[1]

                          Defendants.

    *Pro se* plaintiff Lamonte Alton Ealy was granted leave to proceed on a First Amendment retaliation claim against certain employees of the Wisconsin Department of Corrections, all of whom are named as defendants above, as well as on a state law claim for defamation against defendant Darrell Janzen alone.  Before the court is defendants' motion for summary judgment.  (Dkt. #42.)  For the reasons that follow, the court will grant in part defendants' motion, granting summary judgment in favor of all defendants *except* for Darrell Janzen.  As to the latter, the court will deny defendants' motion with respect to plaintiff's claims for both First Amendment retaliation and defamation.

---

[1] The clerk's office is directed to correct the names of defendants on the docket to reflect the names actually appearing in the caption of this opinion, and going forward, for both the court and parties to name only the remaining defendant Darrell Janzen.

## UNDISPUTED FACTS[2]

### A. Overview of the Parties

Plaintiff Lamont Alton Ealy is an inmate in the custody of the Wisconsin Department of Corrections ("DOC"), and he was incarcerated at New Lisbon Correctional Institution ("NLCI") at all times relevant to his complaint.[3] All of the defendants are or were employees of the DOC, most of whom were employed at New Lisbon at all times material to plaintiff's complaint. As relevant, the court describes individual defendant's specific role or position in the facts below.

### B. Concerns with Ealy's Performance as a Laundry Worker

At all times relevant to Ealy's claims, defendant Darrell Janzen was the first shift sergeant on the A-Unit. On February 13, 2017, Ely was transferred from a second shift A-Unit janitor to a second shift A-Unit laundry worker. The transfer was approved by the sergeant for the second shift, Sergeant Mattke, and another DOC employee, J. Trepes.[4] The laundry room has three main inmate workers: one full-time worker on first shift; one full-time worker on second shift; and a part-time worker that flexes between both shifts.

---

[2] Unless otherwise noted, the court finds the following facts are material and undisputed when viewed in the light most favorable to plaintiff as the non-moving party. Plaintiff responded to defendants' proposed findings of facts but did not submit any proposed facts of his own. Plaintiff did, however, submit a declaration with attached exhibits (dkt. #52), and the court has reviewed that declaration and incorporated some of Ealy's averments into these findings, as appropriate, given his *pro se* status.

[3] The court understands that plaintiff is now incarcerated at Waupun Correctional Institution.

[4] The first names of each are unknown, as is Trepes' position.

The two supervisors of the laundry room, Sergeants Janzen and Mattke, worked collaboratively to make sure that all laundry workers, regardless of their shifts, worked efficiently. As such, Janzen was one of Ealy's supervisors, even though Janzen worked first shift and Ealy worked second shift. At minimum, Janzen was able to observe Ealy's performance during any overlap.

Shortly after he started as a laundry worker, Sergeant Janzen represents that he heard complaints from other inmate workers about Ealy. Specifically, Janzen avers he received complaints from janitors on third shift that Early was not washing their rags in a timely manner, which defendants maintain was one of Ealy's assigned tasks. In response to this proposed finding, Ealy contends that he did not "disregard washing the rags," but also directs the court to a sign in the laundry room that "no mops, rags are to be washed – dried in these machines." (Pl.'s Resp. to Defs.' PFOFS (dkt. #50) ¶ 18; *see also* Ealy Decl., Ex. 1 (dkt. #52-1) (note from Fladhammer acknowledging the sign).)[5] Janzen also avers other inmate workers complained that Ealy was: not completing his work in a timely manner; pushing his work onto other shifts; and attempting to change how the laundry room was run and set up. In response to this proposed finding, Ealy contends that other inmates were provided access to the laundry room to wash rags in violation of the inmate handbook, and any attempt on his part to try to change laundry room procedures was an attempt to enforce institutional rules. (Early Decl., Ex. 2 (dkt. #52-2) (inmate handbook

---

[5] Ealy also objects to this proposed finding of fact on hearsay grounds generally. The court agrees that this statement (and the other more specific ones that follow) cannot be admitted for the truth of the matter asserted -- namely, that Ealy was the source of complaints from other inmates -- but those statements may be considered for the impact that they had on Janzen.

stating that "[o]nly the unit laundry worker(s) may operate the washers and dryers" and "are permitted in the laundry room").)  Consistent with Ealy's account, defendants acknowledge that janitors were allowed access to the laundry room to wash their rags, despite this violating written rules, in an effort to make sure that the rags were cleaned in a timely manner.  Ealy also complained to Sergeant Janzen about non-laundry workers having access to the laundry room.

Defendant Traci Navis, a NLCI Unit Manager, also represents that she received complaints about Ealy's job performance on multiple occasions.  Navis recalls complaints from staff about Ealy not doing his job as indicated in the job description, complaining about his job, and attempting to make changes without staff approval.  Navis also recalls hearing complaints from inmates who worked with Ealy.[6]  Navis further avers that she personally witnessed Ealy's job performance, noting that he complained frequently, had a poor attitude about his job and coworkers, and would not accept direction from any supervisor.  Specifically, Navis observed that Ealy would ignore staff and often became confrontational when was given direction.  Ealy purports to dispute these observations on the basis that Navis would "spend most of her time in her office."  (Pl.'s PFOFs (dkt. #50) ¶ 25.)

Manager Navis also avers that staff, including herself, spoke with Ealy on multiple occasions about his work performance and attitude, including giving him "verbal warnings"

_____

[6] As he did with respect to Janzen's statements, Ealy challenges these statements on hearsay grounds as well.  Again, here, the court only considers the statements for the effect they had on Navis, not for the truth of the matter asserted or to the extent they may corroborate Janzen's assertions as to what he had heard.

about his performance, as well as providing direction and encouragement. (Defs.' PFOFs (dkt. #44) ¶ 26.) However, Ealy disputes that he was ever provided a verbal warning, in part by representing that if an inmate disobeys orders, staff would have written him up in a conduct report. (Pl.'s PFOFs (dkt. #50) ¶ 26.) Nevertheless, Navis avers that, despite this feedback and verbal warnings, Ealy did not show any improvement or signs of working to make improvements.

## C. Performance Evaluation and Termination

DAI Policy 309.00.01 establishes guidelines for inmate work placement. Specifically, inmates should be evaluated by a supervising staff at least once every six months using form DOC-780A. However, evaluations may be completed more frequently as determined by work supervisors or the department head.

Because of the complaints that he had received about Ealy's performance, Sergeant Janzen represents that he decided it would be appropriate to complete an early evaluation for Ealy. Specifically, on March 24, 2017, Janzen proceeded with a work performance evaluation. (Janzen Decl., Ex. 1011 (dkt. #46-2).) The evaluation form provides for rankings from 0 to 4 across nine categories, with 0 being the worst rating and 4 being the best. While a score of 36 is, therefore, the maximum score, any score below 19 is considered "unsatisfactory" and can lead to termination. After Ealy received an unsatisfactory score of 18, Janzen noted in the staff comments section, "Inmate is on probation and is always trying to get out of work. When work is given to others then that's still not good enough. [Inmate] is being fired." (*Id.*) Sergeant Janzen and Manager Navis

both signed and dated this document "3/24/17"; where the inmate signature is called for, the form instead states, "refused to sign," and the date of "3/25/17" appears. (*Id.*)

Among other things, Ealy challenges the ratings on this form. Specifically, for the attendance at work category, Janzen rated Ealy a "3," which corresponds with absent 1-2 days in the last 45 days. Ealy contends that this is false, pointing out that he received *full* payment of $15.20 in his trust account statement for that period, which corresponds with him not missing a single day during the roughly six-week period between the start of his employment as a laundry worker and the date of the evaluation. (Pl.'s Resp. to Defs.' PFOFs (dkt. #50) ¶ 39.) Ealy also challenges his ratings with respect to work performance based on Janzen not working second shift and, therefore, not observing Ealy's performance.

Moreover, Ealy points out that Sergeant Mattke hired him as an A-Unit full-time custodian on January 13, 2017, and completed a work evaluation for him on February 11, 2017, before his transfer to the laundry room. On that evaluation, Mattke gave him a rating of 27 out of the possible 36, and as Ealy points out, would have been in a better position to evaluate his work ethic as the supervisor of the laundry room during *his* shift. (Ealy Decl. (dkt. #52) ¶¶ 22-24; *id.*, Ex. 8 (dkt. #52-8).) In response, defendants merely maintain that Janzen properly relied on the complaints he purportedly received in completing the form, and that he need not have personally observed Ealy's work.

On March 27, 2017, Ealy was officially terminated from his position as a laundry worker, though the "effective date" of the termination was either March 25 or 26. (*Compare* Early Decl., Ex. 9 (showing effective date of 03/25/17), *with* Janzen Decl., Ex. 1012 (dkt. #46-3) (showing effective date of 03/26/17, with the "6" hand-written over the 5 in the

prior typed date).)  The paperwork terminating Ealy is signed by Unit Manager Diane

Fladhammer, J. Trepes (whose position is not identified and is not a defendant), and

Janzen.  (Janzen Decl., Ex. 1012 (dkt. #46-3).)  Janzen and Fladhammer both signed the

form on "3/27/17"; Trepes signed it on "4/6/17."  Fladhammer represents that she signed

the form because Manager Navis was on vacation.  Defendants also represent, and plaintiff

does not dispute, that it is not uncommon for inmates to be terminated because of an

unsatisfactory performance evaluation.


### D. Ealy's Complaint about Janzen

Ealy contends that on March 23, 2017, the day before Sergeant Janzen initiated his

early evaluation of Ealy, he followed the chain of command and complained to defendant

Captain Timothy Crapser about Janzen's refusal to follow institutional rules.  In particular,

Ealy avers that he "complained about the [failure to follow the] rule that prohibit[s]

washing and drying rags and mop heads."  (Ealy's Decl. (dkt. #52) ¶ 8.)[7]  In his declaration,

Ealy goes on to aver that despite his complaints directly to Sergeant Janzen, he continued

to allow janitors to access the laundry room, and that decision was also contrary to written

policy, which expressly limits the laundry room to laundry room workers only.  (*Id.* ¶¶ 9-

10.)  Drawing all reasonable inferences in plaintiff's favor, in complaining to Captain

Crapser, Ealy did not limit his complaint to the fact that mops and rags were being cleaned

---

[7] As reflected by the bracketed language in the above, in light of Ealy's further averment that he
explained to Crapser, and had explained to Janzen previously, his view that it was unsanitary to
allow rags and mops to be washed in the laundry room along with the inmates' personal clothing
(*id.*), the court will infer that Ealy actually complained that the prohibition of washing and drying
rags and mop heads in the laundry room was not being followed, rather than complaining about
the prohibition itself.

in the laundry room in violation of a sign prohibiting such washing, but also complained about Janzen's ongoing decisions to allow mops and rags to be cleaned in the laundry room and to permit janitors to clean mops and rags, both of which Ealy contended were in violation of institutional rules or policies.

Defendant Crapser acknowledges that Ealy complained to him, but specifically avers that he complained about being wrongfully terminated from his job, although he does not recall the date of this exchange or any specific details. (Crapser Decl. (dkt. #48) ¶ 6.) There is no dispute that Janzen overheard Ealy complaining to Crapser, but decided not to intervene, assuming Crapser could handle it. After the conversation, Crapser then supposedly spoke with Janzen and, learning more about the situation, avers that he supported Janzen's decision to terminate Ealy based on performance concerns.

Even so, the fact that Crapser recalls Ealy complaining that he was terminated, suggests that the conversation happened *after* Janzen's March 24 performance evaluation and Ealy's subsequent termination on either March 25 or 26. Still, as Ealy represents, Crapser's visit log from "3-23-17" supports his position that the conversation occurred on that date. At minimum, it appears Ealy has a raised an issue of fact as to the date of his exchange with Captain Crapser.

### E. Inmate Complaints

Ealy filed three inmates complaints related to the issues in this lawsuit: NLCI-2017-8391, NLCI-2017-8393, and NLCI-2017-9248. (Miller Decl., Exs. 2, 3, 4 (dkt. ##45-2, 45-3, 45-4).) On March 24, 2017, Ealy filed the 8391 complaint *and* the 8393 complaint, in which he complained about staff misconduct by Sergeant Janzen in handling Ealy's

concerns regarding non-laundry workers having access to the laundry room to wash rags, and also complained that Janzen was hostile, raised his voice, and got angry. The Office of the Institution Complaint Examiner ("ICE") received both complaints on March 27, 2017. That same day, at approximately 12:40 p.m., ICE Tara Miller (formerly known as Tara Fredlund) and also a named defendant, emailed Janzen consistent with her practice, to alert him that she had received two complaints from Ealy about non-laundry workers having access to the laundry room and Janzen raising his voice, as well as to ask him to elaborate on the alleged incidents. Miller received no email in response, but apparently spoke with Janzen about the complaints instead, although she does not recall the exact date of this conversation. Miller also avers that she spoke with Navis about the complaints, also without recalling the specific date of that conversation.

On April 26, 2017, Miller recommended that both complaints should be dismissed, reasoning that Ealy was merely pointing out actions that he did not agree with or like, but that no rule violation had occurred. Warden (and defendant) Donald Strahota approved the dismissal of both complaints on April 27. Ealy does not challenge that these events occurred, but does contend that Miller erred in not finding a violation of institutional rules. On May 4, 2017, Ealy appealed the dismissal.[8] On May 10, the Corrections Complaint Examiner ("CCE") (and defendant) Emily Davidson recommended that Ealy's appeal be

---

[8] The CCE only acknowledged receipt of one appeal, but there is no dispute that Ealy appealed the dismissal of both complaints. Because these complaints are largely duplicative and defendants are not asserting an exhaustion defense, the CCE's failure to acknowledge receipt of one of the appeals is not material.

dismissed on the basis that the issue was appropriately addressed. Finally, the Office of the Secretary approved this dismissal on May 24, 2017.

Separate from these inmate complaints, Ealy also sent a letter to Security Director (and defendant) Larry Fuchs about his termination. On April 3, Crapser was assigned to investigate the letter. After speaking with Janzen and Ealy, Crapser determined that Ealy was terminated based on his job performance.

On April 4, 2017, Ealy filed his third inmate grievance. In the 9248 complaint, he claimed that Janzen falsified a work evaluation and terminated him from his laundry job in retaliation for Ealy complaining about Janzen. In investigating this complaint, ICE Miller contacted Janzen, Navis and Mattke, and she reviewed Ealy's work performance evaluation, the letter he wrote to defendant Sally Wess, the Correctional Management Services Director, and Wess's response.[9]

On May 2, 2017, Miller recommended dismissing the complaint, finding no violation of DAI policy. Ealy does not challenge that Miller made this recommendation, but contends that his "job termination is proof [of an] improper investigation [and less than an] impartial review." (Pl.'s Resp. to Defs.' PFOFs (dkt. #53) ¶ 64.) On May 5, Warden Strahota approved the dismissal. On May 15, Ealy appealed the complaint to the

---

[9] Neither party submits any proposed findings about Ealy's letter to Wess, but defendants attached Ealy's letter, dated April 10, 2017, and Wess's response to Ealy, dated April 27, 2017, as exhibits to Miller's declaration. (Miller Decl., Ex. 1015 (dkt. #45-5); *see also* Ealy Decl., Ex. 5 (dkt. #52-5) (attaching Wess's letter).) In this letter, Ealy contends that he received a poor performance evaluation and was terminated because he had complained about Janzen not following institutional rules. In her response, Wess states that she found his removal from the laundry room job was in accordance with the inmate handbook, having been terminated based on an unsatisfactory performance evaluation.

CCE. That same day, CCE Davidson recommended dismissal, and that decision was accepted by the Office of the Secretary on May 31.

OPINION

## I. First Amendment Retaliation Claim

To prevail on his retaliation claim, Ealy must prove that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected speech caused the deprivation. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Milliman v. Cty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). For purposes of summary judgment at least, defendants initially conceded that the first and second elements of Ealy's claim are satisfied. Specifically, defendants acknowledge that "alleging in good-faith that a supervisor has engaged in inappropriate conduct that violates workplace rules is an activity protected by the First Amendment." (Defs.' Opening Br. (dkt. #43) 15.)

In their reply brief and reply in support of their proposed findings, however, defendants essentially attempt to walk this concession back based on the view that Ealy's description of his protected conduct in opposition to their motion for summary judgment differs from the allegations in the complaint. (Defs.' Reply (dkt. #54) 2; Defs.' Reply to Defs.' PFOFs (dkt. #53) ¶ 41.) Not only is this dispute too late to raise in a brief on summary judgment, but as described in the facts above, Ealy avers that he complained to Crapser about: (1) Janzen's decision to allow mops and rags to continue to be washed in the laundry room, even after Ealy pointed out that this was prohibited by a sign in the

laundry room; and (2) Janzen's decision to allow janitors into the laundry room to wash rags and mops, which Ealy pointed out was prohibited in the inmate handbook. Although defendants failure to move for summary judgment timely based on an argument that Ealy did not engage in protected conduct is by itself enough to deny that motion, a reasonable jury could also find on these facts that the first element of Ealy's claim is satisfied. Defendants also concede that "being terminated from a prison job is a deprivation that would likely deter First Amendment activity in the future." (Defs.' Opening Br. (dkt. #43) 15.)

With regard to the third and final element, plaintiff must make an initial showing "'that a violation of his First Amendment rights was a motivating factor of the harm he's complaining of.'" *Milliman*, 893 F.3d at 430 (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012)). If plaintiff makes this initial showing, then "the burden shifts to the defendant to show that the harm would have occurred anyway." *Id.* (citing *Thayer*, 704 F.3d at 251-52). If defendant produces "evidence that the same decision would have been made in the absence of the protected speech," then "the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Id.* (internal quotation marks omitted) (citing *Thayer*, 703 F.3d at 252). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.*

As such, defendants' motion turns on Ealy's ability to put forth sufficient evidence from which a reasonable jury could conclude that his termination from his laundry job was

motivated by his complaints about Janzen and defendants' proffered reason for terminating his employment was a lie. Here, plaintiff asserts claims against eleven defendants, roughly falling into three categories: (1) Janzen, who authored the performance evaluation and made the initial decision to terminate him; (2) Navis, Fladhammer and Crapser, who were directly involved in the termination decision *or* in his complaints about Janzen; and (3) Wess, Strahota, Fuchs, Thomas, Davidson and Miller, who were involved in reviewing his inmates complaints.

Consistent with this breakdown to start, the court must consider whether plaintiff has come forward with sufficient evidence for a reasonable jury to find a causal nexus between his protected conduct and termination from his prison job *as to each category of defendant*. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional violation.").

## A. Claim against Janzen

Defendants seek summary judgment as to plaintiff's claim against defendant Janzen by asserting flatly that: "Janzen was unaware of any complaints that Ealy had made about him at the time he completed Ealy's performance review on March 24, 2017." (Defs.' Opening Br. (dkt. #43) 18.) However, Ealy both avers and submits other evidence suggesting that he had complained to Crapser about Janzen on March 23, 2017, and Janzen overheard his complaint, which would have been the day *before* Janzen completed Ealy's first negative performance evaluation and decided to terminate Ealy. While the court recognizes that "[s]uspicious timing alone rarely establishes causation," the Seventh

Circuit has also instructed that "if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015). Here, there is sufficient evidence from which a reasonable jury could find that that Janzen was motivated by Ealy's complaints about his failure to follow institutional rules and policies in completing an unsatisfactory performance evaluation and terminating Ealy's employment given: (1) the exceedingly short period of time -- one day -- between Ealy's protected conduct (assuming the jury credits his testimony that the complaint to Crapser occurred on the 23rd) and the date of his performance evaluation; (2) Janzen's relatively unusual decision to issue an early performance review, just six weeks into his new position; and (3) the fact that Janzen was not even the principal supervisor during Ealy's shift.

Defendants also argue that plaintiff cannot demonstrate that Janzen's purported reasons for terminating his employment -- namely, concerns about Ealy's work performance and attitude -- were pretextual. Here, too, plaintiff has put forth sufficient evidence from which a reasonable jury could conclude that Janzen's proffered reasons for the poor evaluation and termination decision were not the true reasons. Specifically, Ealy offers evidence of his satisfactory performance as a janitor in his job immediately preceding his job in the laundry room, along with actual, second shift supervising sergeant Mattke giving him a satisfactory review a few days before his transfer to the laundry room and also approving his transfer to that job. At the very least, some of Janzen's proffered concerns about Ealy's performance touch on the concerns Ealy avers he first raised in his complaints to Crapser, including that Janzen was not enforcing institutional rules promoting hygiene

14

and safety. Finally, Ealy challenges Janzen's rating on the attendance category, maintaining that he had not missed a day of work during that six-week period.

For these reasons, the court will deny defendants' motion with respect to Ealy's claim against Janzen.

### B. Claims against Defendants Involved in Termination Decision

The next category of defendants concerns those DOC employees who signed off on Ealy's termination -- Tracy Navis and Diane Fladhammer -- and the individual to whom Ealy complained about Janzen's failure to follow institutional rules -- Timothy Crapser. Because plaintiff must demonstrate that *each* of the defendants acted in retaliation of his protected conduct, absent evidence that these defendants were aware of his protected conduct, a reasonable jury could not find that either defendant was motivated by that protected conduct in taking their respective adverse actions. *Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 (7th Cir. 2011) ("For a viable case, [plaintiff] must prove defendants' knowledge of the protected speech to establish retaliation.").

With respect to defendant Navis, while she signed off on the performance evaluation, Ealy presents no evidence that she was aware of Ealy's complaints that Janzen was not following institutional rules before doing so. Navis does aver that she heard from others that Ealy had complained about his job and attempted to make changes without staff approval, but this is not enough, at least alone, to draw a reasonable inference that Navis was aware of Ealy's complaint about Janzen not following the rules. Similarly, the undisputed evidence demonstrates that Fladhammer's only involvement was signing off on the termination paperwork, apparently because Navis was on vacation, but there is again

no evidence to support a reasonable finding that Fladhammer was aware of Ealy's protected conduct.

In this category of defendants, that leaves defendant Crapser, to whom Ealy allegedly complained about Janzen before he issued the unsatisfactory performance evaluation and decided to terminate his employment. On this record, a reasonable jury could conclude that Crapser was aware of plaintiff's protected conduct before his termination, unlike defendants Navis and Fladhammer, but plaintiff offers no evidence that Crapser was *involved* in any adverse action. Indeed, on the record at summary judgment, all indications are that Crapser was *not* involved in the decision to issue a critical performance evaluation. At most, Crapser was tasked with investigating a letter Ealy submitted to Fuchs, but Ealy offers no evidence or argument that Crapser's role in that investigation constituted an adverse action.

For these reasons, the court will grant defendants' motion for summary judgment as to Navis, Fladhammer and Crapser.

### C. Claims against Defendants Involved in Post-Termination Administrative Complaints

Finally, there is the category of those defendants whose only involvement appears to have occurred after Ealy's termination, beginning with Correctional Management Services Director Sally Wess, to whom Ealy sent a letter dated April 10, 2017, disputing his termination. In that letter, Ealy complained that he was terminated from his position because he had complained about Janzen's failure to follow institutional rules. Because Wess was not involved in the adverse action of terminating his employment, plaintiff

appears to be claiming that Wess's failure to order his reinstatement as a laundry worker (or otherwise take steps to address the alleged retaliation) constitutes an adverse action in its own right. However, the only evidence that Ealy submitted about defendant Wess's actions concern her responsive letter, which explained that she investigated his complaint and determined that he was terminated for unsatisfactory work performance. In particular, Ealy offers no evidence from which a reasonable jury could conclude that Wess's investigation was a farce; neither does he otherwise offer evidence from which a jury could infer that her reason for rejecting his dispute was pretextual, nor that she acted with retaliatory intent. *See Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015) ("[T]he chain of causation can be broken if the unbiased decision-maker conducts a meaningful and independent investigation of the information being supplied by the biased employee." (internal citation and quotation marks omitted)).

Similarly, the remaining defendants were all involved in Ealy's formal administrative complaints: Inmate Complaint Examiner Miller reviewed all three complaints and recommended their dismissal; NLCI Warden Strahota affirmed all three dismissals; and Corrections Complaint Examiner Davidson recommended denials of Ealy's appeals from those dismissals. Like his letter complaint to Wess, the dismissal of these subsequent complaints turns on a finding that each defendant acted with retaliatory intent and that their actions constitute separate adverse actions. Plaintiff's evidence falls short of permitting a reasonable jury from so finding. To the contrary, the Seventh Circuit has held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [original constitutional] violation." *George v. Smith*, 507 F.3d 605, 609

(7th Cir. 2007); *see also McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) (same).

This just leaves two other defendants, Fuchs and Thomas, each of whose connection to the events material to this lawsuit are even more attenuated that that of defendants Miller, Strahota and Davidson. Security Director Fuchs was simply copied on Strahota's email that affirmed the dismissal of plaintiff's administrative grievance. Fuchs purportedly received a letter from Ealy, which he then tasked Crapser to investigate, but Ealy offers no evidence or argument to support a finding that these actions constituted retaliation. As for defendant Thomas, plaintiff does not identify him, provide his position, or otherwise describe his *actions*, other than by stating that as a "superior" Thomas was obligated to intervene. (Pl.'s Opp'n (dkt. #50) 10.) This is simply too vague and conclusory to be actionable by itself.

Based on this record, therefore, the court concludes that a reasonable jury could not find the necessary causal nexus between Ealy's protected conduct under the First Amendment and any adverse action by defendants Wess, Miller, Strahota, Davidson, Crapser and Thomas.

## II. Defamation Claim against Janzen

Plaintiff was also granted leave to amend his complaint to add a state law defamation claim against Sergeant Janzen based on his statements in Ealy's performance evaluation dated March 24, 2017. Defendants also seek summary judgment on this claim.

Under Wisconsin law, to prove a defamation claim, plaintiff must put forth sufficient evidence from which a reasonable jury could find the following three elements: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other

than the person defamed; and (3) the communication is not privileged and would tend to harm one's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her. *Amoroso v. Schuh*, 278 F. Supp. 3d 1106, 1111-12 (W.D. Wis. 2017) (quoting *In re Storms*, 2008 WI 56, ¶ 38, 309 Wis. 2d 704, 750 N.W.2d 739).

Defendants seek summary judgment on this claim based on two arguments: (1) Sergeant Janzen's statements about inmate Ealy's work performance were not false; and (2) Janzen's statements about Ealy's work performance were privileged. With respect to defendants' first argument, Ealy has put the truth of Janzen's statements in dispute as already explained above, including specifically taking issue with Janzen's rating of Ealy's attendance and other statements about his poor performance and attitude. In light of this dispute of fact, the court must reject this basis for summary judgment.

As for the second argument, defendants contend that each of Janzen's statements are subject to the conditional privilege of "common interest," and Ealy cannot demonstrate that Janzen abused his privilege.[10]   Under the common interest privilege, defamatory statements are conditionally privileged if they "are made in furtherance of common property, business, or professional interests" -- a privilege that extends to "partners, officers of a corporation for profit, fellow shareholders . . . fellow servants . . . [and] persons

---

[10] While the Wisconsin Supreme Court recognized in *Zinda v. La. Pac. Corp.*, 149 Wis. 2d 913, 921, 440 N.W.2d 548, 552 (1989), that the privilege applies to those related by employment, defendants do not point to any caselaw applying the privilege in the context of a correctional officer's supervision of an inmate's work. Nonetheless, at this point, the court will assume the privilege applies, although it would be helpful if defendants could provide further support for the application of the privilege in their jury instruction submissions.

associated in professional activities." Restatement (Second) of Torts § 596 cmt. d (1977); *see also Zinda v. La. Pac. Corp.*, 149 Wis. 2d 913, 923, 440 N.W.2d 548, 552 (1989). The common interest privilege exists unless the defendant abuses the privilege. *Zinda,* 149 Wis. 2d at 924, 440 N.W.2d at 553 (citing *Ranous v. Hughes*, 30 Wis. 2d 452, 467, 141 N.W.2d 251 (1966)).

As the Wisconsin Supreme Court explained in *Vultaggio v. Yasko*, 215 Wis. 2d 326, 572 N.W.2d 450 (1998), this privilege

> may be abused, (1) because of the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (see §§ 600–602); (2) because the defamatory matter is published for some purpose other than that for which the particular privilege is given (see § 603); (3) because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (see § 604); (4) because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (see § 605); or (5) the publication includes unprivileged matter as well as privileged matter (see § 605A).

*Id.* at 331-32, 572 N.W.2d at 452-53 (citing Restatement (Second) of Torts).

Even assuming the applicability of the common interest privilege, plaintiff has submitted sufficient evidence from which a reasonable jury could infer that: (1) Janzen abused the conditional privilege by either knowingly or in reckless disregard of the truth submitting false information in the performance evaluation; or (2) he lied in the performance evaluation to have a basis to terminate Ealy's employment in retaliation for his complaints that Janzen failed to follow the institutional rules.

As such, the court must also deny defendant Janzen's motion on the state law claim against him.

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #42) is GRANTED IN PART AND DENIED IN PART.  The motion is denied as to plaintiff's First Amendment retaliation claim and defamation claim asserted against defendant Darrell Janzen.  In all other respects, the motion is granted.

Entered this 27th day of February, 2020.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge